IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

Clean Water Action Council of Northeastern
Wisconsin, Inc.,
P.O. Box 9144
Green Bay, WI 54308,

  and

Curt Andersen
2942 Jack Pine Lane
Green Bay, WI 54313,

    Plaintiffs,

            Case No. _____

  v.

Appleton Coated LLC,
540 Prospect Street
Combined Locks, WI 54113,

    Defendant.

---

## COMPLAINT

Plaintiffs, Clean Water Action Council of Northeastern Wisconsin, Inc. and Curt Andersen, (hereinafter together as "Plaintiffs"), by their undersigned attorneys, allege as follows:

### INTRODUCTION

1. This is a civil action for declaratory and injunctive relief, civil penalties, and costs and fees under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401, *et seq.* and the federally-enforceable CAA State Implementation Plan ("SIP") for the State of Wisconsin.

2. Plaintiffs seek an order requiring Defendant Appleton Coated LLC ("Defendant") to comply with the requirements of the CAA, the Wisconsin SIP, and the terms and conditions of Defendant's air permits issued pursuant to the CAA and the Wisconsin SIP; to pay civil penalties for its past and ongoing violations of the Act; to off-set its illegal "excess emissions" pollution; and to pay Plaintiffs' costs of litigation (including attorney's and expert witness fees) as authorized by the CAA's "citizen suit" provision, 42 U.S.C. § 7604.

**PARTIES**

3. Plaintiff Clean Water Action Council of Northeastern Wisconsin, Inc. ("CWAC") is a nonprofit membership organization incorporated under the laws of the State of Wisconsin. CWAC's mission is to protect the public health and environment of northeastern Wisconsin. Several of CWAC's members live, work, and recreate near and downwind from Defendant's facility that is alleged to be in violation of the CAA. These members are adversely affected and injured by Defendant's unlawful pollutant emissions because their health and welfare, as well as their enjoyment of outdoor activities, has been and continues to be harmed by air pollution from Defendant's facility.

4. Plaintiff Curt Andersen is a member of CWAC who lives, works, and recreates in the Fox River Valley, including in areas downwind from the Appleton Coated plant. Mr. Andersen's health, recreational, and aesthetic interests have been and continue to be injured by the excess air pollution emitted by Defendant's facility and his reasonable concerns about Defendant's air pollution emissions.

5. Defendant Appleton Coated LLC owns and operates a paper manufacturing facility located at 540 Prospect Street, Combined Locks, Wisconsin 54113 (the "Facility").

6. Defendant's Registered Agent, registered with the State of Wisconsin for purposes of receiving legal process, is CT Corporation System, 8040 Excelsior Drive, Suite 200, Madison, Wisconsin. Defendant is a "person" within the meaning of Sections 302(e) and 304(a) of the Act, 42 U.S.C. §§ 7602(e), 7604(a).

## JURISDICTION, VENUE, AND NOTICE

7. This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604, 28 U.S.C. §§ 1331, 1355, and 2201.

8. The relief requested by the Plaintiffs is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 7413 and 7604.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in and all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Eastern District of Wisconsin. Venue is also proper pursuant to 42 U.S.C. § 7604(c)(1) because Defendant's Facility is located within the Eastern District of Wisconsin.

10. To the extent required by the Clean Air Act, Plaintiffs provided notice on June 30, 2010, to Defendant, the Administrator of the U.S. Environmental Protection Agency ("USEPA"), the Acting Regional Administrator of USEPA Region 5, the Wisconsin Governor, and the Secretary of the Wisconsin Department of Natural Resources ("WDNR") of Plaintiffs' intent to sue Defendant for the CAA violations alleged in this complaint, pursuant to 42 C.F.R. § 7604(b) and 40 C.F.R. Part 54. Not all claims herein require such notice. Specifically, claims pursuant to 42 U.S.C. § 7604(a)(3) require no prior notice.

11. To Plaintiffs' knowledge, neither USEPA nor the State of Wisconsin has commenced, or is diligently prosecuting, a civil or criminal action against Defendant to abate the CAA violations that form the basis for this complaint.

## GENERAL ALLEGATIONS

### Defendant's Facility

12. Defendant's Facility consists of five boilers, a screen printing press, an off-machine coater, and various rollers, presses, and related equipment for manufacturing coated paper.

13. The boiler operated by Defendant known as Boiler 10 is the largest boiler at the Facility, and burns coal, natural gas, sludge, and wood waste. Boiler 10 is rated at approximately 341.3 million British thermal units per hour ("MMBtu/hr").

14. The boiler operated by Defendant known as Boiler 11 is rated at approximately 285 MMBtu/hr and burns natural gas and distillate fuel oil.

15. Defendant's Facility releases numerous air pollutants (including from Boilers 10 and 11), which include sulfur oxides (SOx), nitrogen oxides (NOx), carbon dioxide ($CO_2$), carbon monoxide (CO), mercury, particulate matter, hydrogen chloride, and others.

16. Individually and collectively these pollutants contribute to global warming, acid rain, regional haze, formation of ground level ozone or smog, pollution of surface waters, and have other harmful effects on human health or the environment.

### The Clean Air Act

17. The Clean Air Act requires that the EPA promulgate National Ambient Air Quality Standards ("NAAQS"), which are upper limits on air pollution, to protect public health and welfare, 42 U.S.C. § 7409.

18. The Act also requires each state to designate those areas within its boundaries where the air quality meets or exceeds NAAQS for each pollutant. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area, whereas an area that exceeds

the NAAQS is a "nonattainment" area. Areas for which there is insufficient information to determine compliance with NAAQS are "unclassifiable," 42 U.S.C. § 7407(d).

19. CAA section 110, 42 U.S.C. § 7410, requires each state to adopt and to submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS. SIP requirements are federally enforceable in citizen suits under CAA Section 304(a)(1), 42 U.S.C. § 7604(a)(1).

20. The Wisconsin SIP has been approved by the USEPA pursuant to the Act and is incorporated into federal law by publication in the Federal Register and Code of Federal Regulations. *See e.g.*, 40 C.F.R. § 52.2569, *et seq.*

21. The CAA also requires USEPA to establish new source performance standards ("NSPS") for various categories of stationary sources determined by USEPA to cause or contribute significantly to air pollution. 42 U.S.C. § 7411. Among the NSPS promulgated by USEPA are standards for new and modified steam generating boilers, which are applicable to Defendant's Boiler 10. 40 C.F.R. Part 60, Subparts D and Db.

22. Title V of the CAA, 42 U.S.C. § 7661, requires each state to establish a federally-enforceable operation permit program. The CAA and Wisconsin's SIP have, at all relevant times, required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the SIP. 42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a)(1); Wis. Admin. Code § NR 407.09.

23. The CAA also establishes a Prevention of Significant Deterioration ("PSD") program to protect air quality in areas designated as in attainment with NAAQS. 42 U.S.C. §§ 7470, *et seq.* Pursuant to that program, new emission sources and major modifications to

existing emission sources must obtain PSD permits prior to construction and, subsequently, comply with the emission limits and other requirements established in those permits.

## Permits Issued to Defendant's Facility

24. Defendant has received multiple air pollution control permits issued by USEPA or WDNR for the Facility.

25. The following are among the PSD permits have been issued for the Facility:

   a. Permit No. EPA-5-A-84-1, issued on November 25, 1983;
   b. Permit No. 94-RV-050; issued on October 27, 1994;
   c. Permit No. 07-DCF-019, issued on June 6, 2008;
   d. Permit No.06-DCF-270; issued on June 19, 2007; and
   e. Permit No. 06-DCF-270-R1, issued on June 24, 2008.

26. Defendant was also issued a Title V operation permit, Permit No. 445031290-P01, by WDNR on June 17, 2002. That permit expired five years after permit issuance, on June 17, 2007.

## Limitations on the Facility's Visible Emissions

27. Certain of Defendant's permits, the Wisconsin SIP, and applicable CAA NSPS regulations impose limits on visible air pollutant emissions, or "opacity," from the stack associated with Boiler 10.

28. Permit EPA-5-A-84-1, ¶ 25; Permit 94-RV-050 § I.1; Permit 07-DCF-019, § I.E'.5.a.; Permit 445031290-P01, § I.E.5.a.(1); the Wisconsin SIP at Wis. Admin. Code § NR 415.05; and federal NSPS regulations at 40 C.F.R. § 60.42(a)(2) each limit opacity from Boiler 10 to 20%.

29. Some of the permits and regulations contain different alternative limits and/or exemptions, which may apply to Defendant's emissions at different times and under different conditions. Permit EPA-5-A-84-1, ¶ 25 and the NSPS standard provide an exception for one 6-

minute period per hour which may be no more than 27% opacity (and no more than 3 such periods per day). Permit 94-RV-050 provides no exemptions whatsoever.

30. Permit 07-DCF-019, § I.E'.5.a. and the Wisconsin SIP at Wis. Admin. Code § NR 431.05(1) (previously Wis. Admin Code § NR 154.11) each limit visible emissions from Boiler 10 to 20% opacity, except that when combustion equipment is being cleaned or a new fire started, emissions may exceed 20% opacity but may not exceed 80% opacity for 6 minutes in any one hour, and such excess emissions cannot occur more than 3 times per day. No provision is made in Permit 07-DCF-019 or Wisconsin SIP at Wis. Admin. Code § NR 431.05(1) for a once-per-hour 27% opacity event.

31. Where multiple requirements apply, the most stringent controls. *See e.g., In re Louisiana Pacific Corp.*, Petition No. V-2006-3, Order at 9 (EPA Adm'r, Nov. 5, 2007). Therefore, Permit EPA-5-A-84-1, ¶ 25 and the NSPS regulation, which provide for up to one 6-minute period per hour of no more than 27% opacity, do not exempt Defendant from the 20% limit established in other permits and regulations, such as Wis. Admin. Code § NR 415.05 and Permit 07-DCF-019, § I.E'.5.a. Similarly, none of the exemption provided elsewhere affect the requirements of Permit 94-RV-050, which provides no exemption whatsoever from the 20% opacity limit.

32. Defendant is required to submit quarterly Excess Emissions Reports ("EERs") to the WDNR. Defendant has reported on its EERs that on numerous occasions, Defendant released emissions from its Facility have violated the limits for opacity applicable to Boiler 10. Defendant certifies these EERs, and additional compliance certifications, to WDNR under oath and is subject to civil and criminal liability if the reporting is false.

33. According to the EERs submitted by Defendant to the WDNR, Defendant has violated its opacity limits on hundreds of occasions since 2006. For the period January 2006 through June 2011, Defendant has reported at least 6,358 minutes of excess opacity emissions at Boiler 10, for a total of at least 1,060 discrete violations of its permits and the applicable CAA regulations. There are likely additional violations that were not reported by Defendant in the EERs due to error or misapplication of applicable law.

**Limitations on the Facility's Carbon Monoxide and Volatile Compound Emissions**

34. Pursuant to Permit EPA-5-A-84-1, Carbon Monoxide ("CO") emissions cannot exceed 0.10 lb/MMBtu. This limit, and Permit EPA-5-A-84-1, have never been rescinded, which is the only way that a permit limit issued by USEPA can be changed pursuant to 40 C.F.R. § 52.21. WDNR issued an additional series of permits pursuant to the PSD program for modifications to the fuels from Boiler 10 which limit emissions of Carbon Monoxide to 0.17 lb/MMBtu and, require that the furnace exit temperature never drop below 1250 degrees Fahrenheit for control of both carbon monoxide and volatile compounds.

**FIRST CLAIM FOR RELIEF**
(Emitting Visible Emissions in Violation of Permit EPA-5-A-84-1, ¶ 25)

35. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36. At various times, Defendant emitted visible emissions from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth in Permit EPA-5-A-84-1, ¶ 25.

37. Each 6-minute period during which visible emissions exceeded the applicable limit for Boiler 10 constitutes a separate and distinct violation of Permit EPA-5-A-84-1 and the CAA.

38. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## SECOND CLAIM FOR RELIEF
(Emitting Visible Emissions in Violation of Permit 07-DCF-019)

39. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

40. At various times, Defendant emitted visible emissions from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth Permit 07-DCF-019, § I.E'.5.a.

41. Each 6-minute period during which visible emissions exceeded the applicable limit for Boiler 10 constitutes a separate and distinct violation of Permit 07-DCF-019 and the CAA.

42. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## THIRD CLAIM FOR RELIEF
(Emitting Visible Emissions in Violation of Permit 445031290-P01)

43. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

44. At various times, Defendant emitted visible emissions from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth Permit 445031290-P01, § I.E.5.a.(1).

45. Each 6-minute period during which visible emissions exceeded the applicable limit for Boiler 10 constitutes a separate and distinct violation of Permit 445031290-P01 and the CAA. 42 U.S.C. § 7661a.

46. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## FOURTH CLAIM FOR RELIEF
(Emitting Visible Emissions in Violation of the Wisconsin State Implementation Plan)

47. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

48. At various times, Defendant emitted visible emissions from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth the Wisconsin SIP at Wis. Admin. Code § 431.05 (previously Wis. Admin Code § NR 154.11).

49. Each 6-minute period during which visible emissions exceeded the applicable limit for Boiler 10 constitutes a separate and distinct violation of the Wisconsin SIP and the CAA.

50. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## FIFTH CLAIM FOR RELIEF
(Emitting Visible Emissions in Violation of the CAA
New Source Performance Standard regulations)

51. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

52. At various times, Defendant emitted visible emissions from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth the federal NSPS regulations at 40 C.F.R. § 60.42(a)(2)

53. Each 6-minute period during which visible emissions exceeded the applicable limit for Boiler 10 constitutes a separate and distinct violation of the NSPS and the CAA.

54. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## SIXTH CLAIM FOR RELIEF
(Violations of PSD Permit Limits for Carbon Monoxide and Volatile Compounds)

55. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

56. At various times, Defendant emitted Carbon Monoxide from the stack associated with Boiler 10 at its Facility at rates and concentrations in excess of the limits set forth in Permits EPA-5-A-84-1, 94-RV-050, and 07-DCF-019.

57. At various times, Defendant operated Boiler 10 at its Facility with a furnace exit temperature below 1250 degrees Fahrenheit in violation of Carbon Monoxide and Volatile Compound limitations set forth in Permits 94-RV-050 and 07-DCF-019.

58. Each occasion upon which Defendant emitted Carbon Monoxide in excess of its permit limits, and each occasion upon which Defendant failed to maintain the minimum furnace exit temperature required by its permits, is a separate and distinct violation of Permits 94-RV-050 and 07-DCF-019 and the CAA.

59. These violations entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Clean Water Action Council of Northeastern Wisconsin and Curt Andersen respectfully pray for this Court to:

A. Declare that the Defendant has violated the applicable permit limits on visible emissions, Carbon Monoxide and Volatile Compounds;

B. Declare that the Defendant has violated the applicable New Source Performance Standard and Wisconsin State Implementation Plan limits on visible emissions;

C. Enjoin Defendant from operating its Facility except in complete compliance with permit and State Implementation Plan limits on visible emissions, Carbon Monoxide, and Volatile Compounds;

D. Order the Defendant to immediately comply with the statutory and regulatory requirements cited in this Complaint;

E. Order the Defendant to remedy its past and ongoing violations by, *inter alia*, requiring the Defendant to install any necessary and appropriate pollution controls to avoid additional violations;

F. Order the Defendant to take appropriate actions to remedy, mitigate, and off-set excess emissions caused by the violations of the Act alleged above;

G. Order the Defendant to disgorge profits and other benefits that were improperly obtained through, or as a direct result of, the violations set forth herein;

H. Order the Defendants to pay civil penalties pursuant to 42 U.S.C. §§ 7413(e) and 7604(a);

I. Order that a portion of the civil penalties assessed by the Court be used for a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) that will reduce pollution in the immediate vicinity of Facility, where Mr. Andersen and CWAC's members work, live, and recreate and, therefore, improve the air quality impacts that are harming Mr. Andersen and CWC's members;

I. Order the Defendants to pay Plaintiffs' costs of litigation, including reasonable attorney and expert witness fees, pursuant to 42 U.S.C. § 7604(d);

J. Retain jurisdiction over this action to ensure compliance with the Court's Order; and

K. Order any other relief that the Court finds is just and equitable.

Dated: August 26, 2011

                MCGILLIVRAY WESTERBERG & BENDER LLC

                ___s/ David C. Bender_____
                David C. Bender
                James N. Saul
                211 S. Paterson Street
                Suite 320
                Madison, WI 53703
                Tel. 608.310.3560
                Fax 608.310.3561
                bender@mwbattorneys.com
                saul@mwbattorneys.com